IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| MELISSA MINCEY, | ) | Case No.: 4:24-cv-05121-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **Memorandum Opinion and Order on** |
| SOUTHEAST FARM EQUIPMENT, | ) | **Motions to Exclude Expert** |
| COMPANY, | ) | **Testimony under Rule 702/Daubert** |
| | ) | |
| Defendant | ) | |
| _____ | ) | |
| | ) | |
| DR. KENNETH MINCEY | ) | Case No.: 4:23-cv-01050-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SOUTHEAST FARM EQUIPMENT, | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is a personal injury case.[1] Before the Court are multiple motions filed by

both Plaintiffs, Dr. Kenneth H. Mincey ("Dr. Mincey") and Melissa Mincey

---

[1] Because this Order addresses matters in two consolidated cases stemming from the same underlying incident, all citations to the record in this Order will be to the record in *Melissa Mincey v. Southeast Farm Equipment Company ("Mincey II")*, No. 4:24-cv-05121 (D.S.C. Sept. 16, 2024), the designated lead case, unless otherwise specified. (*See* DE 15 (granting joint consolidation motion).)

For context, the initial action was filed in South Carolina state court by Dr. Kenneth H. Mincey and was removed to this Court in March 2023. *See* Notice of Removal at 1, *Mincey v. Se. Farm Equip. Co. ("Mincey I")*, No. 4:23-cv-01050 (D.S.C. Mar. 15, 2023), ECF No. 1. The designated lead case was the second to be initiated, and was filed by Dr. Kenneth H. Mincey's wife in September 2024. (*See* Compl. at 1, DE 1 at 1.)

(collectively "Plaintiffs"), and Defendant Southeast Farm Equipment Company ("SFEC") seeking to exclude or limit the testimony of designated expert witnesses. Plaintiffs have moved to exclude the opinions of SFEC's expert Scott Salsbery, P.E. ("Mr. Salsbery") (DE 19), while SFEC has filed separate motions to exclude or limit the testimony of Plaintiffs' experts Dr. Olinda Spencer ("Dr. Spencer") (DE 20), Peter J. Sullivan ("Mr. Sullivan") (DE 21), and Lindsay Moore ("Ms. Moore") and Dr. Oliver G. Wood ("Dr. Wood") as to life expectancy (DE 22). The parties have submitted responses in opposition to each motion (DE 25; DE 26; DE 27; DE 28; DE 29), and Plaintiffs have filed a reply in further support of their motion to exclude Mr. Salsbery (DE 32).

Each motion raises issues under the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, addressing the admissibility, reliability, and relevance of expert opinions offered in this action. For the reasons below, the Court grants in part and denies in part the motions as provided here.

## I.     BACKGROUND

### A.     Factual Background

This matter arises from personal injury and loss of consortium actions filed by Plaintiffs against SFEC following an incident involving a John Deere 4230 tractor, VIN 4230H038667R ("the Tractor"). (DE 1.) Dr. Mincey is a general surgeon residing in Little River, South Carolina, and formerly employed at McLeod Loris Seacoast Hospital. (DE 19-1 at 2; *see* Dr. Mincey Dep. 106:1, DE 19-2 at 76.) He owns an approximately 1,600-acre farm in Marion County, South Carolina, used for forestry

and recreational purposes, including hunting. (Dr. Mincey Dep. 20:21–21:21, DE 19-2 at 5–6.) Dr. Mincey used tractors on the property to maintain roads and move fallen logs. (*Id*. 38:17–22, DE 19-2 at 13.)

Between 2016 and 2019, Dr. Mincey acquired the Tractor from his father as a gift. (*Id*. 33:21–35:18, DE 19-2 at 8–10). His father had bought the Tractor at a farm auction in the mid- to late-1980s (*id*. 36:5–10, DE 19-2 at 11). Dr. Mincey testified that he was unaware of any repairs performed on the Tractor or whether he or his father ever possessed an operator's manual. (*Id*. 37:1–7, DE 19-2 at 12; *id*. 52:20–53:12, DE 19-2 at 26–27.)

In 2022, Dr. Mincey had the Tractor transported to SFEC for repair after it stopped functioning. (Dr. Mincey Dep. 39:14–19, DE 19-2 at 14.) He reported problems related to the clutch or transmission and slow engine starting (*id*. 45:9–17, DE 19-2 at 20; *id*. 46:21–24, DE 19-2 at 21). The Tractor remained at SFEC's facility for several months. (*Id*. 42:24–43:17, DE 19-2 at 17–18). According to SFEC mechanic Trenton Bonnett ("Mr. Bonnett"), the Tractor was "split"—a procedure requiring separation of the transmission and clutch housing from the engine. (Bonnett Dep. 22:9–23:6, DE 19-3 at 4; *id*. 26:4–7, DE 19-3 at 8.) Mr. Bonnett replaced the starter, battery, and battery cables and resurfaced two clutch plates. (*Id*. 42:3–43:8, DE 19-3 at 24–25.) The total cost of repairs was over $8,000, and the Tractor was returned to Dr. Mincey after completion. (Mincey Dep. 113:23–114:15, DE 19-2 at 79–80.)

On September 23, 2022, Dr. Mincey discovered the Tractor's battery was dead while inspecting it in a shed on his farm. (*Id*. 58:16–22, DE 19-2 at 32; *id*. 59:15–23,

DE 19-2 at 33.) He placed a charger on the battery and returned later to check its status. (*Id.* 62:14–18, DE 19-2 at 36; *id.* 77:7–14, DE 19-2 at 51.) Standing beside the Tractor, Dr. Mincey reached into the cab and turned the key slightly to assess whether the battery had charged. (*Id.* at 80:6–11, DE 19-2 at 54.) Unbeknownst to him, the Tractor had been left in gear. Upon turning the key, the Tractor started, surged forward, and struck Dr. Mincey, pinning his left leg under a rear tire. (*Id.* 88:24–89:9, DE 19-2 at 62–63; *id.* 90:16–91:13, DE 19-2 at 64–65.) The tire continued spinning on his leg for approximately 30 seconds until the engine choked off. (Mincey Dep. 91:14–92:13, DE 19-2 at 65–66.) Dr. Mincey sustained substantial soft tissue damage and an open wound, ultimately freeing himself using a claw hammer to dig beneath the tire. (*Id.* 78:13–18, DE 19-2 at 52; *id.* 92:16–93:2, DE 19-2 at 66–67.) He testified that he had never previously experienced the Tractor starting in gear or moving unexpectedly. (*Id.* 36:11–25, DE 19-2 at 11; *id.* 38:8–12, DE 19-2 at 13; *id.* 54:10–20; DE 19-2 at 28; *id.* 56:20–22, DE 19-2 at 30.)

Due to limited cellular reception at the farm, Dr. Mincey drove home following the incident and ordered an x-ray himself. (*Id.* 98:5–15, DE 19-2 at 70; *id.* 100:24–101:19, DE 19-2 at 72–73.) The imaging confirmed an ankle fracture. (*Id.* 161:16–18, DE 19-2 at 83.) His wife, a nurse, initially treated the injury at home. (Mincey Dep. 98:25–99:9, DE 19-2 at 70–71.) Surgery was scheduled but delayed due to infection concerns, and Dr. Mincey underwent open reduction internal fixation on October 12, 2022. (Dr. Jackson Dep. 22:7–23:1, DE 19-4 at 3–4.)

Shortly thereafter, Dr. Mincey began experiencing dizziness, lightheadedness, and syncopal episodes, leading to evaluation by cardiologist Dr. William Jackson ("Dr. Jackson") on October 17, 2022. (*Id*. 25:12–26:3, DE 19-4 at 6–7.) Although a preoperative EKG had revealed sinus bradycardia, Dr. Mincey had no documented history of cardiovascular disease. (*Id*. 27:23–28:15, DE 19-4 at 8–9.) A Holter monitor revealed his heart rate dropped to 40 beats per minute. (*Id*. 32:15–33:15, DE 19-4 at 12–13.) Dr. Jackson diagnosed autonomic dysfunction and prescribed midodrine for hypotension, ultimately referring Dr. Mincey for pacemaker implantation on October 28, 2022. (*Id*. at 33:11–14, DE 19-4 at 13; *id*. 35:1–16, DE 19-4 at 15; *id*. 44:24–45:16, DE 19-4 at 20–21.) Dr. Jackson opined that trauma from the Tractor incident resulted in nerve damage leading to the autonomic dysfunction. (Dr. Jackson Dep. 35:6–37:16, DE 19-4 at 15–17.)

Following continued symptoms, Dr. Mincey was referred to neurologist Dr. Spencer to rule out seizure activity. (*Id*. 45:17–23, DE 19-4 at 21.) During inpatient hospitalization, he developed acute delirium and exhibited agitated behavior, prompting transfer to MUSC for further evaluation, including EEG, cardiac monitoring, labs, and a spinal tap. (Dr. Spencer Dep. 17:19–20:21, DE 19-5 at 3–6.) A neuromuscular specialist at MUSC confirmed autonomic dysfunction consistent with trauma. (*Id*. 20:22–22:11, DE 19-5 at 6–8.) After stabilization, Dr. Mincey resumed care with Dr. Spencer. (*Id*. 22:11–23:2, DE 19-5 at 8.)

Although he wanted to return to surgery, the hospital's Executive Medical Committee required a neuropsychological evaluation before reinstating his

privileges. (*Id.* 23:3–25:18, DE 19-5 at 9–11.) Two evaluations conducted in April and May 2023 diagnosed mild cognitive impairment ("MCI"), and it was recommended that Dr. Mincey refrain from returning to medical practice. (*Id.* 25:19–27:14, DE 19-5 at.) According to Dr. Spencer, the MCI was a residual cognitive complication stemming from the earlier delirium and autonomic dysfunction. (Dr. Spencer Dep. 33:15–35:19, DE 19-5 at 19–21.) In late 2023, Dr. Mincey exhibited symptoms including hallucinations, confusion, and disturbed sleep (*id.* 37:3–24, DE 19-5 at 23), leading to concerns about possible Lewey Body Dementia ("LBD"). A skin biopsy performed in January 2024 confirmed the presence of abnormal protein deposits consistent with that diagnosis, which was formally made on February 12, 2024. (*Id.* 38:3–39:2, DE 19-5 at 24–25.)

**B.     Claims and Experts**

Dr. Mincey's Amended Complaint asserts a claim of negligence, based on allegations that SFEC failed to properly inspect, repair, and warn about the defective condition of the Tractor, including the improper handling of the neutral-start safety switch ("NSS"). *See* Am. Compl. at 6, *Mincey I*, No. 4:23-cv-01050 (D.S.C. Mar. 21, 2023), ECF No. 5. Mrs. Mincey asserts a loss-of-consortium claim, seeking recovery for the harm suffered by Dr. Mincey. (Compl. at 2–4, DE 1 at 2–4.)

In support of their claims, Plaintiffs have disclosed several expert witnesses. Mr. Sullivan, a mechanical expert, opines that SFEC likely installed a jumper wire bypassing the NSS, which rendered the Tractor capable of starting while in gear. (DE 26.) Ms. Moore, a certified life-care planner, estimates future care costs, initially

using a statutory life expectancy but later amending her projections to reflect the shortened lifespan associated with LBD. (DE 28.) Dr. Wood offers economic opinions regarding Dr. Mincey's financial losses and life care costs. (DE 28.) Plaintiff also intends to offer, a neurologist named Dr. Spencer, who treated Dr. Mincey and who will opine that the injuries he sustained triggered a neurological cascade culminating in LBD. (DE 29.)

SFEC has designated Mr. Salsbery as an expert in mechanical engineering. Mr. Salsbery opines that the bypass could have preexisted SFEC's work and that Plaintiff's actions contributed to the incident. He also challenges Mr. Sullivan's methodology. (DE 25.)

Plaintiffs move to exclude Mr. Salsbery's testimony, arguing he is unqualified to opine on service industry standards and that his conclusions invade the province of the jury. (DE 19; DE 32.) SFEC moves to exclude the testimony of Dr. Spencer, Mr. Sullivan, Ms. Moore, and Dr. Wood under Rule 702, contending that their methodologies are flawed and their opinions unreliable or speculative. (DE 20; DE 21; DE 22.)

The Court now considers these motions under the legal standard governing expert testimony under Rule 702 of the Federal Rules of Evidence.

## II.     LEGAL STANDARD

District courts "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993). Rule 702 of the Federal Rules of Evidence was amended in response to *Daubert* and its progeny to provide:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of an expert witness's testimony bears the burden of proving that such testimony meets the requirements of Rule 702 by a preponderance of evidence. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n. 10). As the text of the rule suggests, district courts have a "special obligation" as gatekeepers. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). This means that regardless of the content of the expert testimony, "a district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable." *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019).

Beginning with qualifications, "[t]he test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702—knowledge, skill, experience, training, or education." *Santos v. Posadas De Puerto Rico Assocs., Inc.*, 452 F.3d 59, 64 (1st Cir. 2006).

Turning to methodology, the court must consider "whether the reasoning or methodology underlying the testimony" is reliable. *Daubert*, 509 U.S at 592–93. Certain nonexclusive factors address the reliability of a particular theory or technique, namely, whether the theory or technique:

(1)     can be and has been tested;

(2)     has been subjected to peer review and publication;

(3)     has a known or potential rate of error; and

(4)     has attained general acceptance in the pertinent scientific community.

*See id.* at 593–94. Of course, given the district court's role regarding all expert testimony, "some of *Daubert*'s questions can help to evaluate the reliability even of experience-based testimony." *Kumho Tire Co.*, 526 U.S. at 151. But in any given case, which of these factors are applicable "depends upon the particular circumstances of the particular case at issue." *Id.* at 150. And importantly, the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

Finally, relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. *See id.* at 593; *see also* Rule 402, Fed. R. Evid.

9

However, "the trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 631 (4th Cir. 2018) (alteration omitted) (quoting another source).

## III.    DISCUSSION

### A.    Exclusion of SFEC's Expert, Mr. Scott Salsbery

Plaintiffs move to exclude or limit the testimony of Scott Salsbery, P.E., on two primary grounds: (1) that he is unqualified to offer opinions on the applicable standard of care for a tractor service and repair provider, and (2) that several of his opinions are not based on specialized knowledge but reflect lay conclusions that invade the province of the jury. (DE 19-1 at 13.)

#### 1.    *Mr. Salsbery's Qualifications*

According to his expert report, Mr. Salsbery is a licensed professional engineer in the State of Iowa with over 11 years of experience in the design, manufacture, service, and maintenance of mechanical drives and systems. (DE 19-6 at 4.) He holds both a Bachelor of Science and a Master of Science degree in Mechanical Engineering from the University of Iowa and is a member of professional organizations including the American Society of Mechanical Engineers (ASME), SAE International, and the American Society of Agricultural and Biological Engineers. (*Id.*) He also reports over eight years of experience at John Deere Power Systems, where he served as a product engineer responsible for engine components and subsystems. His work involved 3D modeling, numerical model development, design analysis, geometric dimensioning

10

and tolerancing (GD&T), tolerance stack analysis, component and subsystem testing, and related technical tasks. (*Id.*)

While Plaintiffs do not contest Mr. Salsbery's credentials in mechanical engineering, they contend he is unqualified to offer opinions on the standard of care applicable to dealership service providers. Plaintiffs cite deposition testimony in which Mr. Salsbery explicitly disclaimed offering any such opinion. (Mr. Salsbery Dep. 7:2–13, DE 19-10 at 3.) When asked whether he intended to offer opinions on the applicable standard of care for a tractor service provider, Mr. Salsbery answered, "I don't – I don't have any opinions on that." (*Id.*)

The Court finds that Mr. Salsbery is qualified under Rule 702 because of his education, licensure, and engineering experience to offer expert opinions on the mechanical design, functionality, and modification of agricultural equipment, including the Tractor. However, Mr. Salsbery has expressly disavowed offering any opinion on whether SFEC or its personnel complied with or breached any standard of care applicable to agricultural equipment servicing or repair. (Mr. Salsbery Dep. 7:2–13, DE 19-10 at 3.) Given this testimony, the Court finds that Plaintiffs' motion is well taken to the extent that they seek to preclude Mr. Salsbery from offering standard of care opinions related to SFEC's conduct.

Accordingly, Plaintiffs' motion is granted in part as to the scope of Mr. Salsbery's testimony. Mr. Salsbery may not testify regarding the applicable standard of care for agricultural equipment service providers, including whether SFEC's conduct was reasonable or met industry norms. However, Plaintiffs' motion to exclude

Mr. Salsbery based on qualifications is denied—he remains qualified to offer opinions on the Tractor's design, mechanical systems, the nature and implications of any modifications (including the jumper wire), and whether particular service procedures would have necessarily implicated the NSS or associated wiring.

### 2. *Mr. Salsbery's Opinions*

According to his expert report, Mr. Salsbery offers several opinions to a reasonable degree of scientific and engineering certainty. (DE 19-6 at 15–16.) These include, but are not limited to:

- that Dr. Mincey was an experienced user of agricultural equipment and disregarded safety procedures when starting the Tractor from a position near the rear tire;

- that the Tractor was modified by the addition of a jumper wire bypassing the NSS;

- that the identity of the individual who installed the jumper wire has not been established from available evidence; and

- that the service performed by Mr. Bonnett did not require inspection or manipulation of the NSS, based on repair procedures in the relevant technical manual.

(*Id.*)

Plaintiffs move to exclude these—and other—opinions because they do not rely on specialized knowledge, lack methodological reliability, and intrude upon the jury's role in assessing witness credibility and fault. (DE 19-1 at 13–15.) Plaintiffs particularly object to Mr. Salsbery's opinions that address Dr. Mincey's awareness of risk, whether he followed safety instructions, and whether his actions caused the incident. (*Id.*) Plaintiffs also challenge Mr. Salsbery's opinions on the jumper wire

modification as speculative, arguing he did not inspect the Tractor or conduct testing to support his conclusions. (*Id.* at 17–18.) Upon review, the Court finds that some of Mr. Salsbery's opinions are admissible under Rule 702, while others must be excluded.

### a.     Admissible Engineering Opinions

"Generally, the test for exclusion of expert testimony is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered." *United States v. Rouse*, No. 22-4479, 2024 WL 2044630, at *1 (4th Cir. May 8, 2024) (per curiam) (alterations adopted) (quoting *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989)); *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) ("The witness'[s] qualifications to render an expert opinion are . . . liberally judged by Rule 702."). Of course, "[t]he notion that Daubert . . . , requires particular credentials for an expert witness is radically unsound." *Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) (Posner, J.).

Mr. Salsbery is qualified to offer opinions based on his engineering experience and review of technical documentation concerning the mechanical functionality of the Tractor and the effects of the jumper wire modification. So, these of his opinions are admissible:

- technical explanations about how, on the Tractor, the jumper wire bypasses the NSS;

- how such a bypassing would allow the Tractor to start while in gear;

13

- that according to the applicable technical manual, "separat[ion] [of] the engine from the clutch housing" on the Tractor did not require "disconnect[ion] [from] the [NSS] from the transmission housing" nor did it require separation of "the wiring harness from the [NSS] [ ]"; and

- that the "addition of a jumper wire to the [NSS] circuit" constituted a "material[ ]modifi[cation]" of the Tractor.

(DE 19-6 at 9–12.)

As noted, Mr. Salsbery's opinion regarding "the technical manual process" for the engine separation procedure performed by Mr. Bonnett is admissible. (*Id.* at 13.) Despite Plaintiffs' protestations that this testimony is not "based on any specialized knowledge [Mr.] Salsbery may have," (DE 19-1 at 16), "*Daubert* is a flexible test and no single factor, even testing, is dispositive." *Nease v. Ford Motor Co.*, 848 F.3d 219, 232 (4th Cir. 2017). Trial courts are afforded broad discretion in determining which factors constitute "reasonable measures of reliability in a particular case." *Id.* Here, Mr. Salsbery's qualifications are supported by his reliance on the applicable technical manual—which he references in his report. (*See* DE 19-6 at 13.) This testimony is germane to Mr. Salsbery's qualifications and falls within the scope of Rule 702(a) and (c), so Plaintiffs' disagreement with his conclusions or underlying assumptions goes to the weight of the evidence, not its admissibility. *See Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017).

Accordingly, the Court finds that these opinions are based on sufficient data, apply reliable engineering principles, and are relevant to a fact in issue for purposes of admissibility under Rule 702(b)–(d). The Court makes no determination in this Order as to whether the jumper wire was, in fact, a contributing factor in the incident;

such factual determinations are reserved for the trier of fact. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021).

### b.     Inadmissible Conduct and Causation Opinions

In contrast, the Court finds that several of Mr. Salsbery's opinions must be excluded. Specifically, those opinions that are not grounded in specialized engineering knowledge:

- "Dr. Mincey was an experienced user of agricultural equipment which included [the Tractor]";

- "Dr. Mincey knew of the hazards of attempting to start the . . . tractor while standing in front of the rear tire" or "when not seated in the [T]ractor's cab";

- "Dr. Mincey failed to follow the warnings and instructions provided in [the Tractor's] Operators Manual";

- "Dr. Mincey failed to follow the on-product warnings and instructions provided on" the Tractor;

- That as regards all such warnings and instructions, Dr. Mincey "knowingly violated" them; and

- that the accident "would have been avoided" had Dr. Mincey operated the Tractor from the seat.

(DE 19-6 at 15–16.)

These statements are not the product of any engineering methodology, are not tied to technical analysis, and are based on testimony and warnings that the jury is equally capable of reading and evaluating. District courts "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but *reliable*." *Daubert*, 509 U.S. at 589 (emphasis added). Mr. Salsbery is not trained in human

15

factors, accident reconstruction, or psychology, and does not employ any methodology for determining awareness or foreseeability. Accordingly, his opinions concerning what Dr. Mincey knew, should have done, or failed to do, do not meet the reliability or relevance requirements of Rule 702.

Plaintiffs' motion to exclude the expert testimony of Scott Salsbery is granted to the extent that it seeks to exclude Mr. Salsbery's opinions above. But the motion is denied as to Mr. Salsbery's engineering opinions about the mechanical function of the Tractor, the effect of the jumper wire modification, and the technical scope of the repair procedure performed by SFEC.

## B. Exclusion of Plaintiffs' Experts Dr. Olinda Spencer, Mr. Peter J. Sullivan, Ms. Lindsay Moore, and Dr. Oliver G. Wood

### 1. *Dr. Olinda Spencer*

SFEC moves to exclude the testimony of Plaintiffs' expert[2] Dr. Olinda Spencer, specifically her opinion that Dr. Mincey's traumatic injuries caused or triggered the onset of LBD. SFEC contends that Dr. Spencer's opinion must be excluded because (1) it constitutes impermissible *ipse dixit* (because I said so) reasoning unsupported

---

[2]    The Court acknowledges SFEC's contention that Plaintiffs "failed to disclose" Dr. Spencer. (DE 20 at 1 n.1; *see* Pls.' R. 26(a)(2) Exp. Disc. at 1–2, Mincey I, No. 4:23-cv-01050 (D.S.C. May 6, 2024), ECF No. 39.) Plaintiffs respond by characterizing Dr. Spencer as a "hybrid witness." (DE 29 at 20.) The designation of a witness as "hybrid," however, does not relieve a party of its disclosure obligations under Rule 26(a)(2)(C). That Rule requires disclosure of both (i) the subject matter on which the witness is expected to testify under Federal Rules of Evidence 702, 703, or 705, and (ii) a summary of the facts and opinions to which the witness is expected to testify. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 253 (4th Cir. 2022). Noncompliance with Rule 26(a)(2) may subject the testimony to exclusion under Rule 37(c)(1). *Id.* While these principles are clear, neither party has placed the adequacy of Plaintiffs' disclosures before the Court for decision, and the Court therefore does not reach that issue here.

by a reliable methodology, and (2) it is not based on sufficient facts or data, particularly her alleged failure to consider Dr. Mincey's pre-accident psychiatric and medical history. (DE 20 at 7–9).

Plaintiffs oppose the motion, asserting that Dr. Spencer is a board-certified neurologist who personally treated Dr. Mincey beginning in 2022 and arrived at her opinion through a differential diagnosis based on clinical evaluation, review of post-incident medical records, family interviews, and relevant medical literature. (DE 29; DE 29-7.)

### a.     Qualifications of Dr. Spencer

Although uncontested, under its gate-keeping responsibility the Court first addresses Dr. Spencer's qualifications under Rule 702. According to her affidavit, Dr. Spencer is a board-certified neurologist with more than ten years of experience treating patients with complex neurological conditions, including memory loss, seizures, cerebellar degeneration, and various forms of dementia, including LBD. (Dr. Spencer Aff. ¶ 2, DE 29-7 at 2.) She received her medical degree from Ross University School of Medicine in 2013, completed a neurology residency at Duke University Hospital in 2018, and has been employed as a general neurologist at McLeod Health since that time. (*Id.* ¶ 3, DE 29-7 at 2.)

Dr. Spencer is also Dr. Mincey's treating neurologist, having begun her evaluation and treatment of him in 2022 following his traumatic leg injury. She observed the development of autonomic dysfunction, orthostatic hypotension, and

cognitive symptoms, ultimately diagnosing him with LBD based on clinical progression and confirmatory testing. (*Id.* ¶¶ 4–6, DE 29-7 at 2.)

The Court finds that Dr. Spencer is well qualified to offer expert medical testimony regarding the diagnosis, progression, and potential causes of neurocognitive decline, including LBD. Her education, board certification, and clinical experience satisfy Rule 702's qualification prong.

### b.    Reliability and Scope of Dr. Spencer's Causation Opinions

The Court next addresses the reliability and permissible scope of Dr. Spencer's opinion that trauma from the September 2022 incident served as a triggering event in the onset of Dr. Mincey's LBD. SFEC contends that this opinion must be excluded because it constitutes impermissible *ipse dixit* reasoning unsupported by a reliable methodology and because Dr. Spencer initially failed to consider Dr. Mincey's pre-incident medical history. (DE 20 at 7–9.)

Dr. Spencer is a board-certified neurologist with over ten years of experience in treating patients with cognitive, autonomic, and neurodegenerative disorders. (Spencer Aff. ¶ 2, DE 29-7 at 2.) She began treating Dr. Mincey shortly after his injury and personally observed the development of autonomic dysfunction, cognitive impairment, and related symptoms. (*Id.* ¶¶ 4–6, DE 29-7 at 2; DE 19-5, Dr. Spencer Dep. 17:19–20:21, 23:3–25:18.) She ultimately diagnosed LBD following progression of symptoms and confirmatory testing, including a skin biopsy. (Spencer Aff. ¶ 6, DE 29-7 at 2; DE 19-5 at 38:3–39:2.)

18

The Court notes that Dr. Spencer did not initially review pre-accident medical records, which SFEC argues undermines the reliability of her causation opinion. However, Dr. Spencer has since reviewed those records and affirms that they do not document any prior history of syncope, hypotension, or cognitive impairment. (Spencer Aff. ¶ 11, DE 29-7 at 4.) The Court finds that this subsequent review addresses the factual deficiency raised in SFEC's motion.

Dr. Spencer represents that her opinion is based on a differential diagnosis, a methodology accepted in the Fourth Circuit as reliable. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999). She states that she ruled out alternative causes such as paraneoplastic syndrome, Alzheimer's disease, vascular dementia, and medication-related factors based on clinical findings, diagnostic studies, and review of the relevant literature. (Spencer Aff. ¶ 9, DE 29-7 at 3.)

Importantly, Dr. Spencer does not assert that the trauma was the sole cause of Dr. Mincey's LBD. Rather, she opines that the traumatic incident likely contributed to or triggered a neurological cascade culminating in the onset of symptoms consistent with LBD. (*Id.* ¶ 6, DE 29-7 at 2; DE 19-5 at 33:15–35:19.) She also considered Dr. Mincey's prior high-level cognitive functioning as a surgeon and the temporal proximity between the trauma and the onset of dysfunction. (Spencer Aff. ¶¶ 6–9, DE 29-7 at 2–3.)

The Court finds that Dr. Spencer's opinion is based on sufficient facts and data and that her methodology is both clinically and legally acceptable under Rule 702(b)–(d). *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig.*,

892 F.3d at 634. However, the Court emphasizes that the complex, multifactorial nature of neurodegenerative diseases like LBD warrants a cautious approach. And, in addition, Dr. Spencer was not disclosed as an expert witness. *See* Pl's R. 26(a)(2) Exp. Disc. at 1–2, *supra*, *Mincey I*, No. 4:23-cv-01050 (D.S.C. May 6, 2024), ECF No. 39. Accordingly, Dr. Spencer may not offer opinions that the trauma was the sole but-for or proximate cause of LBD or that such causation has been established to a reasonable degree of medical certainty. Such opinions fall within the province of expert testimony under Rule 702 and are inadmissible absent proper disclosure.

For clarity, the Court makes no factual finding in this Order regarding whether the trauma actually caused or contributed to the onset of LBD; such determinations are reserved for the trier of fact. Accordingly, SFEC's motion to exclude Dr. Spencer's testimony (DE 20) is denied, but her causation opinion shall be limited in scope to reflect the considerations above.

### 2.    *Mr. Peter J. Sullivan*

SFEC also moves to exclude or limit the testimony of Plaintiffs' expert Peter J. Sullivan, arguing that his supplemental opinions are speculative, lack scientific rigor, and improperly invade the province of the jury.[3] (DE 21.) Plaintiffs oppose the motion,

---

[3]    It is unclear whether SFEC is challenging Plaintiffs' supplemental expert report as untimely and improper under Rule 26(e) of the Federal Rules of Civil Procedure. Rule 26(e) permits supplemental disclosures when the original report is "incomplete or incorrect," but it may not be used to introduce new subject matter or theories after the expert disclosure deadline. *See Campbell v. United States*, 470 F. App'x 153, 157 (4th Cir. 2012) (per curiam). Here, the Court finds that Mr. Sullivan's supplemental report reasonably clarifies and elaborates upon opinions disclosed in his initial report—specifically addressing whether the jumper wire was observable, whether the technician's procedures would have revealed it, and how standard service protocols intersect with those facts. (DE 26-3.)

20

asserting that Mr. Sullivan is a qualified mechanical and forensic expert whose opinions are grounded in professional experience and accepted diagnostic methods in the field. (DE 26.)

### a.     Qualifications and Background

The Court finds that Mr. Sullivan is qualified to offer expert testimony under Rule 702 based on his extensive technical background and professional certifications. He holds a Bachelor of Science in Chemistry and Physics (Texas State University, 1984), and has accumulated over four decades of experience in mechanical inspection, failure analysis, and mobile diagnostics. (*See* DE 26-8 at 70.)

He is certified as a World Class and ASE Master Technician across multiple disciplines and has authored technical manuals, developed diagnostic software, and provided forensic services in complex vehicle and equipment matters, including agricultural machinery. His expertise includes the evaluation of mechanical safety systems, visibility of service-related modifications, and field-based inspection protocols. (*Id.*)

---

While the timing of the disclosure—on the eve of Mr. Sullivan's deposition—is not ideal, Defendant proceeded with the deposition and questioned Mr. Sullivan on the subject matter. Defendant has not demonstrated surprise or prejudice sufficient to justify exclusion. Under Rule 37(c)(1) of the Federal Rules of Civil Procedure:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness… unless the failure was substantially justified or is harmless.

The Rule further permits the court to impose alternative sanctions instead of exclusion, such as awarding costs or allowing further discovery. The Court finds that, under the circumstances presented, any noncompliance with Rule 26(e) is either substantially justified—given the clarifying nature of the supplemental report—or harmless, as Defendant was afforded an opportunity to question Mr. Sullivan at deposition and has not demonstrated any prejudice.

### b.    Reliability under *Kumho Tire*

Because Mr. Sullivan's methodology is not scientific in the traditional *Daubert* sense (i.e., not subject to peer-reviewed publication or lab testing), the Court evaluates it under the framework established in *Kumho Tire Co.*, which governs experience-based expert testimony.

Under *Kumho Tire Co.*, district courts must still assess the reliability of such testimony, ensuring it is:

- based on valid experience or technical knowledge,

- tied to the facts of the case,

- applied in a manner consistent with the expert's field, and

- explained clearly enough for judicial scrutiny.

Mr. Sullivan conducted a comparative debris field analysis to assess whether the jumper wire bypassing the Tractor's NSS had been recently installed or pre-existed SFEC's service. He visually inspected the Tractor and evaluated the relative age, positioning, and particulate accumulation on certain electrical components, including those that undisputably were installed by SFEC. (DE 26 at 8–10.)

This type of visual inspection and comparative surface analysis is consistent with accepted practice in mechanical diagnostics and forensic equipment evaluation. Though it is not subject to formal validation metrics, it falls squarely within Mr. Sullivan's field of practical expertise. The Fourth Circuit has recognized that "some of *Daubert*'s questions can help to evaluate the reliability even of experience-based

testimony," but which factors apply depends on the context. *Kumho Tire*, 526 U.S. at 150–51.

Here, Mr. Sullivan explained why he believed certain surfaces were undisturbed despite prior inspections (DE 26 at 17), addressed alternative interpretations (*id.* at 16–17), and disclosed the limits of his conclusions. The Court is satisfied that the methodology employed is reasonably reliable under Rule 702(c) and has been reliably applied to the facts under Rule 702(d). *See also Nease*, 848 F.3d at 229–30 (affirming that experience-based methods may be admissible where adequately explained and applied).

### c.    Credibility and Weight of the Testimony

SFEC contends that Mr. Sullivan's opinion improperly undermines the credibility of Mr. Bonnett, SFEC's technician. (DE 21 at 13–14.) However, the Court finds that Mr. Sullivan does not directly opine on Mr. Bonnett's veracity. Rather, he offers an alternative interpretation of physical evidence based on observable conditions and technical experience. The Fourth Circuit has repeatedly explained that "questions regarding the factual underpinnings of the expert witness' opinion affect the weight and credibility of the witness' assessment, *not its admissibility*." *Sommerville v. Union Carbide Corp.*, No. 24-1491, slip op at 21 (4th Cir. Aug. 18, 2025) (emphasis added and alterations adopted) (quoting *Bresler*, 855 F.3d at 195). Expert testimony that contradicts a witness's account is not inadmissible per se, provided it does not directly assess truthfulness. *See McKie v. Truckers Exp., Inc.*, 2003 WL 26096228, at *7 (D.S.C. 2003) (citing *Daubert,* 509 U.S. at 592).

The Court concludes that such opinions are appropriate for expert testimony and do not intrude upon the jury's role. SFEC's objections go to the weight, not the admissibility, of Mr. Sullivan's conclusions and may be addressed through cross-examination and rebuttal expert testimony. The Court makes no factual finding in this Order as to whether the jumper wire was, in fact, recently installed, pre-existing, or detectable during service; such determinations are reserved for the trier of fact.

Accordingly, SFEC's motion to exclude or limit the expert testimony of Peter J. Sullivan is denied. Mr. Sullivan's qualifications and experience-based methodology satisfy the admissibility requirements of Rule 702 and *Kumho Tire*, and his testimony is sufficiently tied to the facts of the case to assist the trier of fact. Any remaining concerns are properly reserved for the jury's evaluation.

### 3.    *Ms. Lindsay Moore*

Next, SFEC moves to exclude the testimony of Plaintiffs' life-care planner, Lindsay Moore, on the ground that her calculation of Dr. Mincey's future medical costs is based on an incorrect life expectancy assumption and, therefore, lacks a reliable factual foundation. (DE 22 at 8–11.) SFEC argues that Ms. Moore's use of a 13.99-year life expectancy contradicts the testimony of Dr. Mincey's treating neurologist, Dr. Spencer, who opined that patients diagnosed with LBD typically have a life expectancy of about five years. (*Id*. at 10; Dr. Spencer Dep. 43:25–44:5, DE 22-1 at 13–14.) Accordingly, SFEC contends that Ms. Moore's opinions should be excluded under Federal Rule of Evidence 702 as speculative and unsupported by sufficient facts or data.

24

In response, Plaintiffs clarify that Ms. Moore based her projections on the statutory mortality table set forth in Section 19-1-150 of the South Carolina Code. (DE 28 at 2; Life Care Plan at 1, DE 22-3 at 5.) Plaintiffs further acknowledge that Dr. Spencer has since clarified her testimony to reflect that the average life expectancy for individuals with LBD is five to eight years from diagnosis, not strictly five years. (DE 28 at 2; *see* Dr. Spencer Aff. ¶ 10, DE 28-1 at 3–4.) Most notably, Plaintiffs affirmatively state that Ms. Moore's calculations will be revised and amended at trial to reflect a five- to eight-year life expectancy consistent with Dr. Spencer's updated clinical opinion. (DE 28 at 2.)

### a.     Ms. Moore's Qualifications and Methodology

Although SFEC's motion does not directly challenge Ms. Moore's qualifications or her methodology, the Court finds that Ms. Moore is qualified to provide expert testimony in life-care planning under Rule 702. Ms. Moore is a certified life-care planner (CLCP), board-certified physician assistant (PA-C), and certified brain injury specialist (CBIS). She holds a Master of Science in Physician Assistant Studies from the Medical University of South Carolina and a Bachelor of Science in Education from the University of Georgia. In addition to her life-care planning certification, she is also credentialed as a Certified Coding and Billing Specialist. (DE 28-2 at 40-42.)

Ms. Moore has more than a decade of clinical experience in emergency medicine and has served as adjunct faculty in the Physician Assistant Program at the Medical University of South Carolina. Since 2013, she has managed Moore Medical Consulting, LLC, where she prepares life-care plans, performs case reviews,

and provides expert witness testimony in litigation involving catastrophic injuries and chronic illness. Her methodology—developing cost projections based on medical records, clinical evaluations, provider recommendations, and the anticipated duration of care—is consistent with established practices in the field and has not been challenged as unreliable.

SFEC instead disputes the factual basis for Ms. Moore's calculations, specifically the use of a 13.99-year life expectancy. Even so, as many courts have held, disagreements over the factual assumptions underlying expert testimony— particularly in connection with life expectancy estimates—go to the weight of the testimony, not its admissibility. *See Barnett v. United States*, No. 2:20-CV-02517-DCN, 2021 WL 5713962, at *3 (D.S.C. Oct. 28, 2021); *Moore v. BPS Direct, LLC*, No. 2:17-cv-3228-RMG, 2019 WL 2913307, at *5 (D.S.C. July 8, 2019); *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 809 (7th Cir. 2013). The Fourth Circuit has similarly emphasized that exclusion under Rule 702 is the exception, not the rule. *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 892 F.3d at 631.

Undoubtedly, in certain circumstances a statutory mortality table may be used "to establish the life expectancy of any person" under South Carolina law. S.C. Code Ann. § 19-1-150 (West, Westlaw through 2025 Act No. 94); *see Griggs v. Driggers*, 230 S.C. 97, 100–01, 94 S.E.2d 225, 226 (1956) (recognizing the admissibility of such tables). Although the issue presented here is more nuanced, the possibility that a plaintiff's actual life expectancy may be affected by medical conditions such as LBD does not render reliance on the statutory table inadmissible. *See Kanelos v. Kettler*,

406 F.2d 951, 956 n.30 (D.C. Cir. 1968). Rather, such potential discrepancies go to the weight of the evidence and are properly addressed through cross-examination or competing expert evidence.

### b.    Relevance and Rule 702(b)

Rule 702(b) requires that expert testimony be "based on sufficient facts or data." Although Ms. Moore's initial use of the 13.99-year life expectancy may not have aligned with Dr. Spencer's prognoses, Plaintiffs have expressly agreed to revise Ms. Moore's assumptions at trial to reflect a five- to eight-year life expectancy. (DE 28 at 2.) This concession resolves any factual inconsistency and eliminates any arguable deficiency under Rule 702(b).[4]

Moreover, SFEC had an opportunity to explore the basis for Ms. Moore's assumptions during her deposition and remains free to challenge those assumptions through cross-examination or rebuttal experts. As such, SFEC has not shown that the initial difference in life expectancy materially undermines the reliability or

---

[4]    Nonetheless, it is equally true that "[b]lind adherence to data of unknown origin does not suffice in federal court." *Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 144 (M.D. Pa. 2015). The Court notes that Dr. Spencer's May 30, 2025, affidavit contains a revised estimate of Dr. Mincey's expected lifespan. (Dr. Spencer Aff. ¶ 10, DE 28-1 at 3–4.) While this affidavit was issued *after* Ms. Moore's deposition, Dr. Spencer's original prognosis of five years was made in April 2024, *before* Ms. Woods's report. And Ms. Woods was adamant that she deferred to Dr. Spencer. (Woods Dep. 39:23–40:7, DE 22-4 at 8–9.)

Defendants only assert a sufficiency-of-the-data concern. (DE 22 at 8.) And while amending Ms. Woods's report cures any issue of defective methodology at this stage, the Court emphasizes that "the expert's opinion must be supported by 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Lee-Bolton v. Koppers Inc.*, 319 F.R.D. 346, 378 (N.D. Fla. 2017) (quoting *Kumho Tire Co.*, 526 U.S. at 152).

admissibility of Ms. Moore's opinions under Rule 702 or that exclusion would be appropriate under Rule 403.

Accordingly, the Court finds that Ms. Moore is a qualified expert, her opinions are grounded in a reliable methodology, and any concerns regarding life expectancy assumptions affect the weight, not the admissibility, of her testimony. The motion to exclude Ms. Moore is, therefore, denied at this time. The Court makes no factual finding in this Order regarding the precise life expectancy of Dr. Mincey; the accuracy of such assumptions remains for the trier of fact to determine based on the evidence presented.

### 3.     *Dr. Oliver G. Wood*

Lastly, SFEC moves to exclude the testimony of Plaintiffs' economic expert, Dr. Oliver G. Wood, because his damages calculations are based on a projected life expectancy of 13.99 years, which SFEC contends is inconsistent with the medical prognosis offered by Dr. Mincey's treating neurologist, Dr. Spencer. (DE 22 at 10–11.) SFEC argues that, because Dr. Wood's economic loss estimates are predicated on an allegedly overstated life expectancy, his opinions lack sufficient factual support under Rule 702(b) and should be excluded as speculative.

Plaintiffs oppose the motion and respond that Dr. Wood is a Ph.D. economist who applied standard economic methodology to forecast damages using a statutory life expectancy drawn from section 19-1-150 of the South Carolina Code. (DE 27 at 12–13.) Plaintiffs cite testimony and cases suggesting that counsel instructed Dr.

Wood to rely on that statutory figure, and that he did not offer, and does not purport to offer, any medical opinion as to life expectancy. (*Id*. at 11–13)

### a.     Dr. Wood's Qualifications and Scope of Testimony

There is no dispute that Dr. Wood is qualified under Rule 702(a). He holds a Ph.D. in economics and has extensive experience in the calculation of economic damages in personal injury and wrongful death litigation. Dr. Wood's report in this case applies standard economic tools—such as present value discounting, inflationary adjustments, and work-life expectancy modeling—to project future wage loss, fringe benefits, and household services losses. (DE 27-8.)

Importantly, Dr. Wood does not render any clinical opinions on the cause, nature, or duration of Dr. Mincey's injuries. He expressly disclaimed any medical expertise and instead applied economic modeling based on input assumptions provided to him, including life expectancy. (DE 27 at 11.) The Court finds that Dr. Wood's role as a damages economist was appropriately circumscribed and that his qualifications and scope of testimony satisfy Rule 702(a) and (d).

### b.     Reliability and Factual Basis of Life-Expectancy Assumption

Dr. Wood initially based his calculations on a 13.99-year life expectancy derived from the South Carolina statutory mortality table. The use of such statutory tables is a widely accepted practice in economic damages analysis and is admissible under South Carolina law. *See Griggs*, 230 S.C. at 100–01, 94 S.E.2d at 226.

Dr. Wood did not independently select or endorse that life expectancy figure. Rather, he relied on the statutory table at the direction of counsel, pending further

clinical input. This methodology does not render his opinions unreliable. The Fourth Circuit and other courts have repeatedly held that factual disagreements over expert assumptions—particularly those that can be corrected or clarified—go to the weight of the evidence, not its admissibility. *See Coleman v. Tyson Farms, Inc.*, No. 2:10-CV-403, 2011 WL 1833301, at *3 (E.D. Va. Apr. 13, 2011) ("[t]he asserted fallibility of [an] expert's assumptions affect[ ] the weight of his testimony, not its admissibility."); citing *Wilder Enters., Inc. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1144 (4th Cir.1980).

Moreover, Plaintiffs have expressly acknowledged their intent to revise Ms. Moore's calculations, and it necessarily follows that Dr. Wood's calculations must likewise be revised to incorporate the five- to eight-year life expectancy range established by Dr. Spencer's medical testimony. (DE 27 at 4.) Such revisions would not only eliminate any arguable inconsistency under Rule 702(b) but also ensure that the expert testimony is properly grounded in the record evidence. Allowing these revisions substantially mitigates any potential prejudice to SFEC, which remains fully able to test the validity of the underlying assumptions through cross-examination or rebuttal expert testimony. In this way, the jury considers expert opinions that are consistent, reliable, and aligned with the evidentiary record.

Accordingly, the Court finds that Dr. Wood's methodology is accepted in the field of forensic economics and has not been independently challenged. Any challenges to the appropriateness of the life expectancy assumption or the factual basis for projected losses may be addressed through cross-examination and argument

at trial. Thus, the motion to exclude the testimony of Dr. Wood is denied. The Court makes no factual finding in this Order as to Dr. Mincey's actual life expectancy or the precise amount of economic loss; those determinations are reserved for the trier of fact.

## IV.    CONCLUSION

For these reasons, and pursuant to Rule 702 of the Federal Rules of Evidence and standards set forth in *Daubert*, the Court issues the following rulings:

1. Plaintiffs' Motion to Exclude the Expert Testimony of Scott Salsbery, P.E. (DE 19) is **GRANTED IN PART AND DENIED IN PART**.

   - **Excluded**: Any opinions regarding (a) the applicable standard of care for agricultural equipment service providers; (b) whether Defendant Southeast Farm Equipment Company's conduct complied with or breached such a standard; (c) Plaintiff Dr. Mincey's awareness of hazards; (d) whether Dr. Mincey failed to follow warnings or instructions; and (e) causation of the incident by Dr. Mincey's conduct.

   - **Permitted**: Opinions regarding (a) the mechanical design and functionality of the John Deere 4230 tractor; (b) the implications of the jumper wire modification; and (c) the technical scope of the repair procedures performed by Defendant Southeast Farm Equipment Company, including whether those procedures would have required interaction with the neutral start safety switch.

2. Defendant Southeast Farm Equipment Company's Motion to Exclude the Expert Testimony of Dr. Olinda Spencer (DE 20) is **DENIED IN PART.**

   - **Excluded**: Any opinion that the trauma was the sole but-for or proximate cause of Lewy Body Dementia or that such causation is established to a reasonable degree of medical certainty.

3. Defendant Southeast Farm Equipment Company's Motion to Exclude or Limit the Expert Testimony of Peter J. Sullivan (DE 21) is **DENIED.** Mr. Sullivan is qualified to offer experience-based expert opinions concerning mechanical inspection, service feasibility, and component analysis. His methodology, rooted in comparative visual inspection and field-based diagnostic practices is sufficiently reliable under Rule 702 and *Kumho Tire*.

4. Defendant Southeast Farm Equipment Company's Motion to Exclude the Expert Testimony of Lindsay Moore and Dr. Oliver G. Wood (DE 22) is **DENIED**. Both experts are qualified under Rule 702 and employed accepted methodologies in their respective fields.

- Plaintiffs shall serve revised life-care and economic damages calculations reflecting a five- to eight-year life expectancy, consistent with Dr. Spencer's updated medical opinion, within 14 days of this Order, in compliance with Rule 26(e), Fed. R. Civ. P.

Accordingly, the motions are **GRANTED IN PART** and **DENIED IN PART** as set forth above.

**AND IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

August 25, 2025
Florence, South Carolina